**O**
**JS-6**

# United States District Court
# Central District of California

LOS ANGELES UNIFIED SCHOOL
DISTRICT,

          Plaintiff,

   v.

CITIGROUP INC.; CITIMORTGAGE,
INC.; CITICORP TRUST BANK, FSB;
CITI HOLDINGS, INC.; CITIBANK,
NA.,

          Defendants.

Case No. 2:14-cv-07368-ODW(RZx)

**ORDER GRANTING MOTION TO
DISMISS [22]**

## I.  INTRODUCTION

This case is one of four identical actions filed by Plaintiff Los Angeles Unified School District ("LAUSD") against large banking institutions alleging violations of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3604–05.  LAUSD alleges that several years of discriminatory lending practices in violation of the FHA caused a high number of foreclosures and property value reductions, which in turn "reduce[d] the property tax revenues collected by LAUSD."  (ECF No. 1 ["Compl."] ¶¶ 113–22.)  Pending before the Court is a Motion to Dismiss filed by Defendants CitiGroup Inc., CitiMortgage, Inc., CitiCorp Trust Bank, FSB, Citi Holdings, Inc., and CitiBank, N.A.

(collectively "CitiGroup").  (ECF No. 22 ["MTD"].)  For the reasons discussed below, the Court **GRANTS** CitiGroup's Motion to Dismiss.[1]

## II.    FACTUAL BACKGROUND

The factual allegations against CitiGroup in LAUSD's one-count Complaint are nearly indistinguishable from the factual allegations against CitiGroup by the City of Los Angeles in two other matters before the Court.  *See City of Los Angeles v. CitiGroup Inc., et al.*, No. 13-cv-09009 (C.D. Cal. filed Dec. 5, 2013); *California v. CitiGroup Inc., et al.*, No. 14-cv-09749 (C.D. Cal. filed Dec. 19, 2014).[2]  Due to the similarity among the pleadings, the Court incorporates the factual background section from a recent order denying CitiGroup's motion to dismiss, *see City of Los Angeles v. CitiGroup Inc.*, 24 F. Supp. 3d 940, 944–45 (C.D. Cal. 2014), and will only briefly mention several key distinguishing facts.

LAUSD's boundaries cover 720 square miles, to include the City of Los Angeles and thirty-one other municipalities.  (Compl. ¶ 21.)  LAUSD receives a portion of its operating revenue from local property taxes.  (*Id.* ¶ 121.)  According to LAUSD, CitiGroup's discriminatory and unlawful lending practices, which targeted African-American and Latino borrowers, caused a disproportionately high number of foreclosures in historically underserved minority communities within LAUSD's boundaries.  (*Id.* ¶¶ 9–17.)  The foreclosures resulted in vacant homes and depressed property values for surrounding properties, thus leading to a decrease in property tax

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

[2] In fact, the same factual allegations now serve as the bases for nine other lawsuits in the Central District, six of which are before this Court.  *See City of Los Angeles v. Wells Fargo & Co., et al.*, No. 13-cv-09007 (C.D. Cal. filed Dec. 5, 2013); *City of Los Angeles v. Bank of Am. Corp., et al.*, No. 13-cv-09046 (C.D. Cal. filed Dec. 6, 2013); *City of Los Angeles v. JPMorgan Chase & Co., et al.*, No. 14-cv-04168 (C.D. Cal. filed May 30, 2014); *Los Angeles Unified Sch. Dist. v. Bank of Am. Corp., et al.*, No. 14-cv-07364 (C.D. Cal. filed Sept. 19, 2014); *Los Angeles Unified Sch. Dist. v. JPMorgan Chase & Co., et al.*, No. 14-cv-07369 (C.D. Cal. filed Sept. 19, 2014); *Los Angeles Unified Sch. Dist. v. Wells Fargo & Co., et al.*, No. 14-cv-07370 (C.D. Cal. filed Sept. 19, 2014); *California v. Bank of Am. Corp., et al.*, No. 14-cv-09744 (C.D. Cal. filed Dec. 19, 2014); *California v. JPMorgan Chase & Co., et al.*, No. 14-cv-09750 (C.D. Cal. filed Dec. 19, 2014); *California v. Wells Fargo & Co., et al.*, No. 14-cv-09751 (C.D. Cal. filed Dec. 19, 2014).

revenue.  (*Id.* ¶ 17.)  LAUSD alleges that the "decreased property values of foreclosed [and surrounding] homes in turn reduce property tax revenues to the School District and constitute damages suffered by LAUSD."  (*Id.* ¶ 121.)

## III.   LEGAL STANDARDS

### A.   Federal Rule of Civil Procedure 12(b)(1)

A Rule 12(b)(1) motion tests whether the court has subject-matter jurisdiction to hear the claims alleged in the complaint.  *See* Fed. R. Civ. P. 12(b)(1).  When a motion to dismiss attacks subject-matter jurisdiction on the face of the complaint—a "facial challenge"—the court assumes the factual allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor.  *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).  The pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), apply in equal force to facial challenges.  *See Perez v. Nidek Co.*, 711 F.3d 1109, 1113 (9th Cir. 2013); *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012).

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a factual attack, a court need not presume the truthfulness of the allegations in the complaint and may consider extrinsic evidence.  *See White v. Lee*, 227 F.3d 1214, 1242–43 (9th Cir. 2000) (affirming judicial notice of matters of public record in Rule 12(b)(1) factual attack); *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (holding that a district court is free to hear evidence regarding jurisdiction).  But courts should refrain from resolving factual issues where "the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on resolution of the factual issues going to the merits."  *Augustine*, 704 F.2d at 1077.

### B.   Article III Standing

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an

actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). Each of these elements "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

## IV.   DISCUSSION

CitiGroup's Motion raises a Rule 12(b)(1) factual challenge to this Court's subject-matter jurisdiction. Specifically, CitiGroup argues that LAUSD did not suffer any injury because LAUSD's funding levels never decreased as school district funding in California is regulated by the State and insulated from decreases in local property tax. (MTD at 12–14.) The Court first notes that it is not writing on a blank slate. Judge Percy Anderson recently dismissed LAUSD's *identical* lawsuit against Bank of America on grounds that LAUSD did not suffer an injury in fact. *See Los Angeles Unified Sch. Dist. v. Bank of Am. Corp., et al.* ("*LAUSD I*"), No. 14-cv-07364 (C.D. Cal. January 7, 2015) (order granting motion to dismiss). Judge Anderson's thorough and well-reasoned opinion serves as an excellent guidepost, however LAUSD's legal theory of injury in this case is slightly different. The Court will discuss both theories.

### A.   Injury Based on the Overall Decrease of Funds

LAUSD's Complaint, while quite long and detailed, does not expound on its alleged injury. LAUSD only alleges that it "suffered financial injuries as a direct result" of CitiGroup's discriminatory lending practices, and it therefore "seeks

damages for its reduced property tax revenues."  (Compl. ¶¶ 113, 115.)  Based on these allegations, one would reasonably believe that LAUSD is alleging that it lost money or received fewer funds as a result of CitiGroup's conduct.  That was CitiGroup's understanding when it filed its Motion to Dismiss.  In its Motion, CitiGroup argues that LAUSD's "funding did not depend on local property tax revenue" as the State of California "determine[s] the amount of the District's funding pursuant to a legislative formula."  (MTD at 2.)

CitiGroup's argument is accurate, as confirmed by Judge Anderson's recent opinion.  Judge Anderson correctly explains that "although property taxes are a source of LAUSD's revenues, property taxes do not determine LAUSD's level of funding." *LAUSD I*, at *4 (citing *Belanger v. Madera Unified Sch. Dist.*, 963 F.3d 248, 251–52 (9th Cir. 1992)).  Judge Anderson concluded that even accepting the allegations of discriminatory lending practices and a decrease in overall property tax revenue within LAUSD's boundaries, "any drop in the property tax revenues did not cause a reduction in LAUSD's funding levels."  *Id.*  A wealth of authority supports this conclusion.  *See* Cal. Educ. Code §§ 42238–38.24;  *Belanger*, 963 F.3d at 252 ("because the state has complete control over the amount of property tax revenue that the district receives, and because this revenue is simply credited toward the revenue limit payment from the state fund, the property tax revenue is no more local than state income taxes generated from the same area"); *Serrano v. Priest*, 557 P.2d 929, 938–39 (Cal. 1976); *Cal. Teacher's Ass'n v. Hayes*, 7 Cal. Rptr. 2d 699, 706 (Cal. Ct. App. 1992).

To the extent that LAUSD's alleged injury is grounded in losing overall revenue as a result of CitiGroup's lending practices, the Court follows Judge Anderson's lead—there is no injury because the State ensures that funding levels remain stable.  However, LAUSD's Opposition Brief clarifies its legal theory of injury, and thus the disposition of the pending Motion is slightly different than *LAUSD I*.

**B.     "Clarified" Theory of Injury Based on Tracing**

In its Opposition Brief, LAUSD explains the following:   "[CitiGroup's] causation argument assumes that LAUSD pleads injury based on its overall school funding.  But what LAUSD actually alleges is reduction in its property tax revenues." (ECF No. 29 ["Opp. Br."] at 1.)  LAUSD contends that all property tax revenue goes directly to the county auditor, who then distributes those funds locally pursuant to state law.  (*Id.* at 7.)  According to LAUSD, because "property taxes from a given county get allocated to local jurisdictions within that county," any decrease in local property tax directly causes a "reduction in [LAUSD's] property tax revenues." (*Id.* at 8.)  LAUSD's clarified theory of injury relies on basic tracing—it follows identified funds from the tax-paying homeowners in Los Angeles County, to the county auditor, and then to LAUSD.  LAUSD alleges that it received a reduced amount of specific funds generated by property taxes in Los Angeles County

Factually, LAUSD is correct—the literal reduction of property taxes in Los Angeles County would reduce the amount of funds in LAUSD's operating budget identified as originating from Los Angeles County property taxes.  The question then becomes whether reducing one source of funds without regard to the bottom-line is a recognized injury in fact under Article III.

The Court will first determine whether LAUSD suffered an economic or physical injury.  *See Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 154–55 (1970) (finding that physical or economic injuries are generally sufficient to maintain injury in fact).  LAUSD has no ownership interest in any of its sources of funding.  "School moneys belong to the state, and the apportionment of funds to a school district does *not* give that district a *proprietary right* therein."  *Cal. Teacher's Ass'n*, 7 Cal. Rptr. 2d at 706 (emphasis added).  LAUSD cannot manufacture a legal right to funds simply because the homes within its boundaries are the source—the State owns *all* funds.  Without a legal right to any of the funding sources, regardless of origin, LAUSD cannot possibly suffer an economic injury if the property tax

revenue from Los Angeles County is reduced.  Furthermore, the manner in which LAUSD actually receives its funds from the State indicates that LAUSD is not aware of the funding sources when distributed.  Under California law, "state and local revenue is commingled in a single fund under state control," with the State having "complete control over the amount of property tax revenue that the district receives." *Belanger*, 963 F.2d at 252.  The commingled nature of the funds means that LAUSD must hire an accountant just to determine whether it received fewer funds from local property tax revenue.  The mere fact that the actual property tax revenue from Los Angeles County reaches the LAUSD bank account is irrelevant—local property taxes immediately lose their identity as "local" as soon as the funds are commingled and the State takes ownership.  LAUSD has no legal right to any particular funding source and the State has complete control over revenue distribution.  Therefore, LAUSD did not suffer an economic injury when it received fewer funds traced from Los Angeles County.

While an economic injury is not the only way to satisfy Article III standing, an abstract injury is not enough.  *Lyons*, 461 U.S. at 101.  "[C]laims of injury that are purely abstract, even if they might be understood to lead to 'the psychological consequence presumably produced by observation of conduct with which one disagrees,' do not provide the kind of particular, direct, and concrete injury that is necessary to confer standing."  *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 616 (1989) (internal citation omitted).  If LAUSD does not seek damages for an economic injury, it is therefore seeking damages for an intangible injury resulting from the knowledge that the source of funding changed.  Assuming the factual allegations in the Complaint are true, CitiGroup's actions did alter the actual percentages of LAUSD's funding sources, and it is clear that LAUSD disagrees with CitiGroup's lending practices.  However, the mere knowledge of a change in funding is not a "particular, direct, and concrete injury" necessary to establish Article III standing.  *See id*.  LAUSD's

///

Complaint and Opposition Brief fail to explain how this knowledge creates an injury, and the Court finds no precedent to support this theory.

The Court finds that LAUSD suffered no injury in fact, whether economic or otherwise, when a dollar originating from a Los Angeles County taxpayer is replaced by a dollar from somewhere else. LAUSD has no proprietary right to any of the dollars as the State has complete control over the entire process. LAUSD carries the burden of establishing all three elements of standing, and it failed to carry this burden in proving injury in fact. *See Lujan*, 504 U.S. at 561.

**C.    Collateral Source Rule**

In response to CitiGroup's claims that LAUSD did not suffer any injury, LAUSD argues that "collateral source funds received from the State cannot be used to offset decreased property tax damages caused by [CitiGroup's] discriminatory lending." (Opp. Br. at 9.) According to the Ninth Circuit, "[u]nder the collateral source rule, benefits received by the plaintiff from a source collateral to the defendant may not be used to reduce that defendant's liability for damages" because "the defendant should not get a windfall for collateral benefits received by the plaintiff." *McLean v. Runyon*, 222 F.3d 1150, 1155–56 (9th Cir. 2000).

As an initial matter, the Court notes that LAUSD's collateral source argument is offered in response to CitiGroup's claims that the *overall* funding level was not impacted by its lending practices. LAUSD's Opposition Brief clarified that its theory of injury is not based on *overall* funding levels. (*See* Opp. Br. at 1.) LAUSD's collateral source arguments, therefore, are only relevant to a legal theory which LAUSD previously abandoned. The collateral source argument is inapposite to a theory of injury based on changes in the sources of funding.

Regardless, the "collateral source rule is inapplicable where a plaintiff cannot plead that he or she has suffered the damages sought." *LAUSD I*, at *5 (quoting *Gillespie v. Travelscape LLC*, No. C13-0622, 2014 WL 4243706, at *2 (W.D. Wash. Aug. 26, 2014)). As Judge Anderson accurately explains, "California's public

education funding system is not a 'collateral source' used to make LAUSD whole for any decrease in local property taxes, whether the decrease is caused by . . . discriminatory lending practices or anything else." *Id.* (quoting *McLean*, 222 F.3d at 1156). The Court finds no reason to depart from Judge Anderson's conclusions.

In support of its collateral source argument, LAUSD contends that CitiGroup "should not receive a windfall because the state ensures equal funding for students." (Opp. Br. at 13.) Assuming that CitiGroup did violate the FHA, the Court agrees that CitiGroup should not receive a windfall—it should fully compensate the injured parties regardless of other sources of compensation. LAUSD, however, is not one of those parties. LAUSD did not suffer damages and therefore the Court rejects the collateral source argument.

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** CitiGroup's Motion to Dismiss. (ECF No. 22.) LAUSD provided no indication that amending the Complaint is possible, and without an injury the Court concludes that granting LAUSD leave to amend would be futile. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990). This action is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**


February 3, 2015


_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**